## ROLFE, Estate of, In re.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19916.   Decided April 16, 1945.

Robt J. Merkle, Cleveland, for plaintiff, appellee-appellant.
David Christopher, Cleveland, Otto Theman, Cleveland, for defendant, appellant-appellee.

## OPINION

By MORGAN, J.

John H. Smart was named Executor and Trustee and was sole beneficiary for life of the income under the will of Imogen W. Rolfe, deceased. After the death of Smart, Robert J. Merkle as Successor Trustee under the will of Imogen W. Rolfe, filed his exceptions to two partial accounts filed by Smart, the original Trustee, and to his final account filed for him after his death by his Executor.

The Probate Court vacated the approval of the two partial accounts and sustained substantially all of the exceptions filed by the Successor Trustee to each account with the result that the Estate of John H. Smart, deceased, was charged with a sum exceeding $33,000.00, in favor of the Rolfe estate of which Smart had been Trustee.

In this case both parties have filed their appeals in this court. The appeal of the Executor of the Smart estate is based on the claim that the Probate Court erred in holding that the ownership of certain narcissi bulbs was in the estate of Imogen W. Rolfe, deceased, whereas the Executor Appellant claims that the bulbs belonged to John H. Smart, individually.

Robert J. Merkle, Successor Trustee of the Rolfe Estate, appeals on the ground that the Probate Court erred in finding that the proceeds of a certain converted War Risk Insurance Policy on the life of John H. Smart are assets of the Smart Estate, whereas, the successor trustee contends that the proceeds of the said policy of insurance were impressed with a trust in favor of the estate of Imogen W. Rolfe, deceased.

1. The record discloses that on July 17, 1931, John H. Smart individually conveyed five vacant lots in Willoughby, Ohio, Lake County, known as the Wood Street lots, to College Finance Inc., a corporation controlled and owned by Smart. Said lots were subsequently conveyed on April 1, 1938, by College Finance Inc., to the Estate of Imogen W. Rolfe, deceased.

John H. Smart in his lifetime, in addition to being an attorney at law, was engaged in the business of raising and selling narcissus bulbs under the name of "Rose Lawn Nurseries." Shortly after the transfer of title of the said five vacant lots to College Finance Inc., Smart transplanted narcissus bulbs from other lots owned by him to the said Wood Street lots where they remained until Smart died on January 26, 1943.

After acquiring title, College Finance Inc., leased the five lots to Smart. In this lease it was provided that College Finance Inc., should retain a lien on the bulbs as security for money owing to College Finance Inc., by Smart. The title to 180 bushels of narcissus bulbs was transferred to College Finance Inc., in liquidation of a note of $994.95 owing to College Finance Inc., by Smart.

The record further discloses that in his accounts filed in Probate Court as Trustee of the Rolfe Estate, Smart claimed credits in an amount exceeding $22,000.00 for vacant land purchased by Smart as Trustee. This land included the Wood Street lots and although the conveyance took the form of a conveyance from College Finance Inc., the real owner and grantor was Smart, individually, inasmuch as he was the sole owner of College Finance Inc.

The Probate Court found correctly:

"that said trustee had no authority under the will or at law to invest trust funds in real estate. That this real estate belonged to the trustee individually, and was merely transferred by him through intervening conveyances to this estate * * * * *. That said alleged investments were fraudulent."

It was also established that the said vacant lots were transferred to the Rolfe Estate at a gross over-valuation.

The Probate Court also found:

"The Court further finds that at the time of the transfer of these lots to the Rolfe Estate a large number of narcissi bulbs were growing thereon; that no reservation of the title to said bulbs was made in the deeds, or otherwise. That title to said bulbs passed with the land and that Robert J. Merkle as Successor Trustee under the Will of Imogen W. Rolfe, has title to and a first and best lien on all of said vacant lots and to all of said narcissi bulbs."

In view of the record in this case, the Probate Court could have come to no other conclusion and the judgment of the Probate Court as to the ownership of the narcissi bulbs is therefore affirmed.

2. On the appeal of Merkle as Successor Trustee of the Rolfe estate, the record discloses the following facts:

On September 22, 1931, John H. Smart applied for and was issued letters of trusteeship under the will of Imogen W. Rolfe, who had died on January 14, 1922. On the same

day, Smart filed an application for the authority of court to loan $8385.00 of his trust funds to the newly organized College Finance Inc. Although in his application Smart represented that he had no personal interest in College Finance Inc., the record discloses and the probate court found:

"That said College Finance Inc. was organized and in all respects and at all times dominated by said John H. Smart for his personal benefit and profit."

In his application Smart represented that College Finance Inc., was the owner of the United States War Risk Convertible Term Insurance Policy in the sum of $10,000.00, which policy was assigned to said corporation by John H. Smart the assured under said policy. He asked leave as Trustee to accept as security for the said loan to be made by the Rolfe Estate to College Finance Inc., an assignment of said policy in the amount of $8857.00.

The Probate Court relying on the statements made in said application, approved the investment by the Rolfe Estate in the notes of College Finance Inc., as prayed for.

At the time of Smart's death, the value of the War Risk Insurance Policy had been reduced by payments of disability benefits to him during lifetime to $6031.00. The beneficiary of the policy at the time of his death was "College Finance Inc., Trustee." At the time of his death the notes of College Finance Inc., to the Rolfe Estate were unpaid.

Following Smart's death, Robert J. Merkle as Successor Trustee of the Rolfe Estate, applied to the Director of Insurance of the Veterans' Administration to pay the amount due on the insurance policy, namely, $6031.00, to him as Successor Trustee. In the reply letter of H. L. McCoy, Director of Insurance, dated June 7, 1943, it was stated:

"It appears from the contents of your letter that the insured attempted to assign the balance of the war risk insurance policy to College Finance Inc., Cleveland, Ohio. The assignment of government insurance is prohibited by law."

To enable the department to make a determination of the matter the Director requested that "there be furnished a certified copy of the last will and testament of John H. Smart as admitted to probate." Upon being furnished the information requested, Mr. McCoy, Director of Insurance, on August 4, 1943, addressed a letter to attorneys, a part of which is as follows:

"Upon further consideration it has been determined that the designation of College Finance Inc., Trustee, Cleveland, Ohio, as beneficiary is void on the basis of admissions made by the insured under date of October 13, 1931, to the effect that this designation was for the purpose of securing money he owed to the estate of Imogen W. Rolfe; such designation constituted an assignment and therefore is prohibited."

"This administrator proposes to pay the proceeds of the policy in the approximate amount of $6031.00 to the executor of the estate of John Harrow Smart."

On August 4, 1943, Mr. McCoy as Director of Insurance wrote a letter to Mr. Merkle, succesor trustee, substantially to the same effect. He wrote another letter to Mr. Merkle on August 27, 1943, in which he stated:

"You are advised that under date of August 28, 1931, the insured, John Harrow Smart, executed a change of beneficiary from and designated as the beneficiary of his government life insurance under Policy K-674029 College Finance Inc., Trustee. This designation, however, cannot be honored and must be held to be null and void, inasmuch as the change of beneficiary was made in order to accomplish an assignment to secure a loan previously obtained. The decision of this Administration to pay the insurance in this case to the estate of the insured, John Harrow Smart, is predicated upon the provisions of Sec. 10 of the Insurance Contract issued this veteran which reads as follows:

### ASSIGNMENT
The proceeds of this policy shall not be assignable except that any person to whom this insurance shall be payable may assign his interest in this insurance to any other beneficiary within the class permitted by the War Risk Insurance Act, or any amendment or supplement thereto. No such assignment of this policy shall be binding upon the United States unless in writing and until filed in the Veterans Administration, Washington, D. C. The United States assumes no responsibility for the validity of any assignment. The proceeds of this policy shall not be subject to the claims of creditors of the insured or creditors of any beneficiary to whom the proceeds may be awarded, except claims of the United States arising under the War Risk Insurance Act or the World War Veterans' Act 1924, as amended."

"It is definitely stated to you at this time that the change of beneficiary in favor of College Finance Inc., Trustee, is

null and void and to no effect. Accordingly, the insurance amounting to approximately $6031.00 will be paid to the estate of the insured, upon receipt of .Letters of Administration and other evidence previously requested."

Accordingly, the Veterans' Administration paid the sum of $6031.00 to the Executor of the Estate of John H. Smart who retains these funds awaiting the determination of this appeal.

It is our opinion that the Veterans' Administration was correct in its ruling for the reasons set forth at length in the above letters from Mr. McCoy, Director. We deem it unnecessary to say more, as we accept and adopt both his reasoning and his conclusion.

The successor trustee contends that John H. Smart had the right to designate any beneficiary he desired for his policy of War Risk Insurance and that inasmuch as he designated as beneficiary College Finance Inc. Trustee, he indicated that College Finance Inc., was to hold the proceeds of the policy on the death of the policy holder in trust for Imogen W. Rolfe Estate.

The answer to this claim is well stated in the concluding paragraph of the letter of August 27, 1943, addressed by Mr. McCoy, Director of Insurance to Mr. Merkle. It is as follows:

"You are correct in your contentions as set forth in the third paragraph of your letter to the effect that the insured had a right to designate any beneficiary he desired. There should be added, however, the qualification that the change of beneficiary cannot be honored or accepted if it is made for the purpose of securing a loan as undoubtedly the change of beneficiary in this case was contemplated, having in mind the provisions of the letter from the insured under date of October 13, 1931."

There can be no doubt but that the change of beneficiary in the policy to College Finance Inc., Trustee, was made to secure a loan by the Rolfe Estate to College Finance Inc., following an assignment to College Finance Inc., of the policy. We are in accord with the conclusion reached by the Veterans' Administration that "the change of beneficiary cannot be honored or accepted if it is made to secure a loan."

Inasmuch as the widow of John H. Smart is the sole beneficiary under his will, this decision means that she will be the ultimate beneficiary of the proceeds of this policy of insurance. This is in accord with the clear intention of the

Congress of the United States in establishing this form of insurance for the benefit of the Veterans of World War I, to protect the widow and the other relatives of the insured dependent upon him.

Therefore, the judgment of the probate court to the effect that the successor trustee of the estate of Imogen W. Rolfe is not entitled to the proceeds of the War Risk Insurance Policy is affirmed.

SKEEL, P. J., and LIEGHLEY, J., concur.